Albert CALBOW and Priscilla Calbow, Plaintiffs-
Appellants,†

v.

MIDWEST SECURITY INSURANCE COMPANY, Defendant-
Respondent.

Court of Appeals

*No. 97–2457. Submitted on briefs November 13,
1997.—Decided March 4, 1998.*

(Also reported in 579 N.W.2d 264.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert L. Jaskulski* of *Domnitz, Mawicke, Goisman & Rosenberg, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James W. Mohr, Jr.* of *Mohr & Anderson, S.C.* of Hartford.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J. Albert Calbow appeals from a summary judgment enforcing the reducing clause in Midwest Security Insurance Company's uninsured motorist policy in favor of Midwest Security. Even though we agree that the purpose of the uninsured motorist coverage is to place the insured in the same position as if the uninsured motorist had been insured, we conclude that an insured who has been fully compensated for injuries from other sources is not entitled to an additional recovery—a windfall—under his or her uninsured motorist benefits. We therefore affirm.

In November 1991, Calbow was injured when Charles Cole, an uninsured motorist, crashed into a Town of Mount Pleasant fire truck. The force of the collision drove the fire truck into four other cars and a truck before it collided with Calbow's vehicle, all of which were stopped at a red light at the intersection of Highway 11 and Green Bay Road in Racine.

Calbow and his wife, Priscilla Calbow, filed suit against the Town of Mount Pleasant and its insurer, Employers Insurance of Wausau. The case was settled on September 28, 1994. In exchange for $250,000, the Calbows executed a *Pierringer*[1] release freeing the

---

[1] *See Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

town, its agents and Employers Insurance from all liability for damages arising out of the November 1991 accident.

The Calbows also made a claim for uninsured (or underinsured) motorist coverage with their insurance carrier, Midwest Security, seeking damages arising out of Cole's negligence.[2] As required by the policy, the parties submitted the Calbows' claim to an arbitration panel. The panel awarded Albert $130,000 and Priscilla $1000 in total damages. The panel deferred the allocation of causal negligence and did not decide whether the Calbows' *Pierringer* release impacted their right to coverage under Midwest Security's policy. Midwest Security then denied the Calbows' request for a liability determination between Cole and the town's fire truck and it denied an uninsured motorist (UM) recovery.

Consequently, the Calbows filed this declaratory judgment action seeking recovery of UM benefits under the policy. Midwest Security filed a motion for summary judgment and attorney's fees. The circuit court concluded that because the Calbows had been fully compensated by the *Pierringer* release, the reducing clauses under both benefits were valid because they prevented a double recovery.[3] The court granted Mid-

---

[2] The circuit court found that the Calbows brought an underinsured motorist (UIM) claim rather than an uninsured motorist (UM) claim. However, the court did not believe that "the distinction or that it may have earlier been referred to as a UIM claim is significant to [its] decision." Because both the UM and UIM benefits contained reducing clauses, we agree.

[3] Midwest Security's UIM benefits reducing clause provides in part:

west Security's summary judgment motion.[4] The Calbows appeal.

The circuit court decided the issue upon a motion for summary judgment, which may be used to address issues of insurance policy coverage. *See State Farm Mut. Auto. Ins. Co. v. Kelly*, 132 Wis. 2d 187, 189, 389 N.W.2d 838, 839 (Ct. App. 1986). For summary judgment to be granted, there must be no genuine issue of material fact and the movant must be entitled to judgment as a matter of law. *See* § 802.08(2), STATS. In addition, the interpretation of a contract and to what extent a reducing clause affects insurance claims presents a question of law which this court decides independently of the circuit court. *See Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). There are no disputed facts here, and the only remaining issue is the question of law involving the policy's interpretation.

Citing to *Nicholson v. Home Insurance Companies., Inc.*, 137 Wis. 2d 581, 405 N.W.2d 327 (1987), the Calbows argue that Midwest Security's reducing clause is void and unenforceable as a matter of law

> The **Limit of Liability** . . . shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. . . .

Midwest Security's UM benefits reducing clause states in relevant part:

> Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
>
> 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. . . .

[4] The court also denied that portion of Midwest Security's motion for attorney's fees. Midwest Security has not appealed that determination and it is not before this court on appeal.

because it would reduce their UM benefits even though the reduction would not be available to the uninsured tortfeasor, Cole. The Calbows maintain that if this case had been tried and Cole had been insured, they would have been able to collect the portion of Albert's $130,000 in damages attributable to Cole, as well as the $250,000 received in exchange for the *Pierringer* release. The Calbows insist that under *Nicholson* they have the right to recover and that the circuit court's ruling is denying them that right.

This case involves an insurance contract between an insurer, Midwest Security, and its insured, the Calbows. Insurance contracts are controlled by the same rules of construction as are other contracts; the goal is to ascertain the intentions of the parties. *Anderson v. American Family Mut. Ins. Co.*, 178 Wis. 2d 835, 839, 505 N.W.2d 433, 435 (Ct. App. 1993). We may not modify the unambiguous language of an insurance contract. *See Fletcher v. Aetna Cas. & Sur. Co.*, 165 Wis. 2d 350, 354, 477 N.W.2d 90, 91 (Ct. App. 1991).

The reducing clause in Midwest Security's policy states: "Any amounts otherwise payable for damages under this coverage shall be reduced by all sums . . . [p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." The policy language is unequivocal: the Calbows received $250,000 which was paid on behalf of persons or organizations who were legally responsible; therefore, the Calbows are not entitled to further recovery.

The result sought by the Calbows would be contrary to the purpose and policy behind UM coverage. The circuit court stated: "Such coverages [UM and UIM] . . . are [not] intended to create exactly the same situation that would have existed if everybody had cov-

erage, but they in fact are intended to enable persons who might not otherwise be able . . . to at least recover what the amount of their actual damage is." We agree.

The primary purposes of UM coverage are to provide compensation to innocent persons who are injured because of the wrongful conduct of uninsured motorists, to make the victim whole for losses sustained at the hands of negligent and financially irresponsible motorists, and to place the injured person in the same position as if the uninsured motorist had been insured. *See* 9 RUSS & SEGALIA, COUCH ON INSURANCE § 122:10, at 122–24–26 (3rd ed. 1997); *see also Nicholson*, 137 Wis. 2d at 597–99, 604, 405 N.W.2d at 333–34, 336. "Uninsured motorist coverage . . . substitutes for insurance that the tortfeasor should have had." *Nicholson*, 137 Wis. 2d at 592, 405 N.W.2d at 331.

In some instances, Wisconsin courts have held reducing clauses to be invalid. For example, a reducing clause cannot be used to reduce UM coverage benefits when such a reduction could not have been used by a tortfeasor. *See United Fire & Cas. Co. v. Kleppe*, 174 Wis. 2d 637, 643, 498 N.W.2d 226, 229 (1993). Nor can a reducing clause place an injured party in a worse position than if the tortfeasor had been insured. *See Nicholson*, 137 Wis. 2d at 604, 405 N.W.2d at 336. However, the courts have not held that reducing clauses in uninsured motorist policies are void as a matter of law. *See Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 297, 491 N.W.2d 119, 125 (Ct. App. 1992). To the contrary, the supreme court has stated that reducing clauses may be valid to the extent that they prevent double recoveries. *See Matthiesen v. Con-*

*tinental Cas. Co.*, 193 Wis. 2d 192, 196, 200, 532 N.W.2d 729, 730–31, 732 (1995).

■

In this case, we conclude that the reducing clause should be invoked in order to prevent a double recovery. The reducing clause would not reduce the protection of the insured below the lesser of the actual loss suffered by the insured ($130,000) or the total indemnification promised were no other amounts paid on behalf of a legally responsible party ($100,000 "each person"). *See id.* at 200, 532 N.W.2d at 732. Unquestionably, if the Calbows were allowed to collect both the $130,000 from Midwest Security under its UM coverage and the $250,000 from the *Pierringer* release, they would be receiving three times their total damages. Uninsured motorist coverage is not intended to provide a fully compensated party with a windfall. Thus, the Calbows are not entitled to recovery beyond the $250,000 *Pierringer* release because the recovery would far exceed the total damages set in the arbitration hearing.

*By the Court.*—Judgment affirmed.